UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JERRY LEE LEWIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:19-cv-00100-JRS-DLP |
| | ) |
| J. SIMS, et al. | ) |
| | ) |
| Defendants. | ) |

**Order Granting Defendants' Motion for Summary Judgment
and Directing Entry of Final Judgment**

Plaintiff Jerry Lee Lewis, an inmate currently incarcerated at the United States Penitentiary in Tucson, Arizona, filed this civil action based on events that occurred while he was incarcerated at the United States Penitentiary in Terre Haute, Indiana (USP-TH). He contends that correctional officers at USP-TH violated the Eighth Amendment when they used standard-sized wrist restraints that were allegedly too small for Mr. Lewis's wrists and refused to provide medical care when Mr. Lewis requested such for injuries sustained as a result of the use of the standard-sized wrist restraints.

The defendants seek summary judgment arguing that Mr. Lewis failed to exhaust his available administrative remedies before filing this lawsuit, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Mr. Lewis has responded to the defendants' motion, the defendants have submitted a reply, and Mr. Lewis has filed a surreply. For the following reasons, the motion for summary judgment, dkt. 43, is granted.

**I. Legal Standards**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court views the facts in the light most favorable to the non-moving party, and all reasonable inferences are drawn in the non-movant's favor. *See Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 628 (7th Cir. 2018).

The substantive law applicable to the motion for summary judgment is the PLRA, which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997(e)(a); *see Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted).

## II. Statement of Facts

The following statement of facts was evaluated pursuant to the standard set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to Mr. Lewis as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

### A. Federal Administrative Remedy Procedure

The Federal Bureau of Prisons (BOP) maintains an administrative remedy procedure, *see* 28 C.F.R. §§ 542.10, *et seq.*, and USP-TH has promulgated an Institution Supplement with

additional information. Upon arrival at USP-TH, an inmate participates in an orientation that includes an explanation of the administrative remedy process and instructions on how to use the law library to access BOP policy and the facility-specific supplements.

When an inmate submits an administrative remedy request, facility staff log it into the BOP's electronic record system, the SENTRY database. Each entry receives a remedy identification number and includes the inmate's Federal Register Number and a short description of the request that often contains abbreviations due to limited space. Through the SENTRY database, facility staff have access to all of an inmate's administrative remedies in a single document.

The federal administrative remedy procedure requires inmates to first attempt to resolve a complaint informally through a submission commonly referred to as a "BP-8." Because this is an informal attempt at dispute resolution, it is not recorded in the SENTRY database. After attempting informal resolution, an inmate may file a formal complaint with the Warden by filing a "BP-9." "The deadline for completion of informal resolution and submission of a formal written [BP-9] is 20 calendar days following the date on which the basis for the [BP-9] occurred." 28 C.F.R. § 542.14(a). The SETNRY database identifies BP-9 submissions with the notation "FI" after the remedy identification number.

If an inmate is not satisfied with the Warden's response to his BP-9 submission, he may appeal to the Regional Office through a submission referred to as a "BP-10." The SENTRY database records BP-10 submissions with an "R1" notation following the remedy identification number. If the Regional Office's response is unsatisfactory, an inmate may further appeal to the General Counsel through a submission called a "BP-11." The SENTRY database identifies BP-11

submissions with the notation "A1" after the remedy identification number. This is the final administrative appeal.

**B. Mr. Lewis's Use of the Administrative Remedy Procedure**

Mr. Lewis was incarcerated at USP-TH from December 1, 2016 through July 3, 2017. He was transferred to the Special Housing Unit (SHU) at USP-TH on April 10, 2017, and he remained there until his transfer to another facility on July 3, 2017. When he arrived at USP-TH, he received a copy of the admissions and orientation handbook that outlined the administrative remedy procedure. According to the SENTRY database, Mr. Lewis submitted two administrative remedy requests concerning his incarceration at USP-TH.

The first administrative remedy request reflected in the SENTRY database, No. 912541-R1, was submitted to the North Central Regional Office on August 17, 2017, and rejected the same day. The North Central Regional Office notified Mr. Lewis that the administrative remedy request was submitted to the wrong regional office.

Mr. Lewis's second remedy request was a re-submission of his first administrative remedy request. He submitted this request, No. 912541-R2, to the Southeast Regional Office on September 13, 2017, as a sensitive BP-10.[1] The Southeast Regional Officer rejected this submission as not sensitive. The SENTRY database logged no further action with respect to this request.

Mr. Lewis contends that he attempted informal resolution of his complaints related to the use of standard-sized wrist restraints by writing a BP-8 form to Counselor Williams on April 28,

---

[1] Pursuant to 28 C.F.R. § 542.14(d)(1), an inmate may submit a complaint directly to the Regional Director, and forego submitting the complaint to the Warden, if "the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the [complaint] became known at the institution."

4

2017.² Mr. Lewis submitted this BP-8 to Unit Manager Rory on May 3, 2017. Counselor Williams responded by writing "no response" on the BP-8. Mr. Lewis states that he then submitted a BP-9, with the BP-8 attached, to the Warden on May 29, 2017.

Mr. Lewis acknowledges that he submitted an appeal to the North Central Regional Office on August 3, 2017. He contends that he filed this appeal because he never received a response from the Warden concerning the BP-9 he submitted on May 29, 2017. He also acknowledges that he filed an administrative remedy request with the Southeast Regional Office after his appeal to the North Central Regional Office was rejected.

Mr. Lewis asserts that he attempted to file a BP-9 in October 2017 with a counselor at the United States Penitentiary in Coleman, Florida (USP-Coleman), after his unsuccessful appeals to the regional offices. He contends that the counselor never logged this request into the SENTRY database, and he has not received a response to his separate administrative remedy request about the failure to process the BP-9 filed in October 2017.

### III. Discussion

The defendants assert that Mr. Lewis's Eighth Amendment claims are procedurally barred due to his failure to exhaust the administrative remedies available to him. In response, Mr. Lewis contends that he has done everything possible to exhaust his claims and that any failure to exhaust was caused by prison officials preventing him from completing the process. Dkt. 47 at 1.

---

² The defendants contend that Mr. Lewis has failed to present admissible evidence in support of his response in opposition to their motion for summary judgment. *See* dkt. 50 at 3-5. However, Mr. Lewis submitted a declaration, dkt. 47-1, signed under penalty of perjury. This submission is "equivalent to an affidavit for purposes of summary judgment." *Owens v. Hinsley*, 635 F.3d 950, 954-55 (7th Cir. 2011); *see also Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (concluding that "verified response constitutes competent evidence to rebut the defendants' motion for summary judgment"). For purposes of this Order only, the Court assumes that the dates provided in Mr. Lewis's surreply, dkt. 53, are correct.

## A. Exhaustion

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (footnote omitted). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)); *see also Ross v. Blake*, 136 S. Ct. 1850, 1857-58 (2016) (explaining why "all inmates must now exhaust all available remedies" and concluding that "[e]xhaustion is no longer left to the discretion of the district court" (internal quotation marks and citation omitted)).

The defendants have met their burden of proving that Mr. Lewis did not complete the administrative remedy procedure as required by the PLRA. Mr. Lewis was transferred from USP-TH on July 3, 2017. Thus, pursuant to the administrative remedy procedure, a BP-9 pertaining to his incarceration at USP-TH must have been submitted by July 23, 2017, twenty calendar days following the event giving rise to the complaint. The SENTRY database shows that Mr. Lewis waited until August 17, 2017, to file an administrative remedy request concerning the use of standard-sized wrist restraints while he was incarcerated at USP-TH.

Mr. Lewis's contention that he submitted a BP-9 about the use of standard-sized wrist restraints to the Warden on May 29, 2017, does not preclude a finding that he failed to exhaust his administrative remedies. By Mr. Lewis's own admission, he attempted to informally resolve his complaint by writing a BP-8 on April 28, 2017. Thus, the event giving rise to the complaint happened that day at the latest. However, he did not file his BP-9 until May 29, 2017, thirty days after the alleged event. This does not satisfy the twenty-day deadline to file a BP-9 established by

28 C.F.R. § 542.14(a) and explained in the admissions and orientation handbook. Further, he did not attempt to file an appeal until August 17, 2017, well beyond the deadline for doing so.

Although Mr. Lewis may have waited until he received a response to his BP-8 before filing a BP-9, the administrative remedy procedure does not require an inmate to await response to a BP-8 before filing a BP-9. Rather, it sets a firm "deadline for completion of informal resolution and submission of a formal written [BP-9]" of twenty calendar days after the event giving rise to the complaint. 28 C.F.R. § 542.12(a). Unfortunately for Mr. Lewis, a possible misunderstanding about the administrative remedy procedure does not excuse a failure to comply with it. *See Dole*, 438 F.3d at 809 ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.").

Mr. Lewis has not fully exhausted the administrative remedy procedure with respect to his complaints about the use of standard-sized wrist restraints.

**B. Availability**

While the PLRA has a strict exhaustion requirement, it also "contains its own, textual exception to mandatory exhaustion. Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 136 S. Ct. at 1858.

"[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Id.* at 1858. (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted). It is the defendants' burden to establish that the administrative remedy process was available to Mr. Lewis. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because

exhaustion is an affirmative defense, the defendant must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it.").

The defendants have satisfied their burden of showing that the administrative remedy process was available to Mr. Lewis. They presented evidence that Mr. Lewis received a copy of the admissions and orientation handbook upon admission to USP-TH and that he had successfully used the administrative remedy procedure in the past. Additionally, Mr. Lewis makes no allegations that the administrative remedy process was unavailable to him while he was incarcerated at USP-TH. Rather, he acknowledges that he filed a BP-9 on May 29, 2017. As explained above, this BP-9 was untimely, and Mr. Lewis provides no evidence or allegation that staff at USP-TH caused it to be untimely.

To the extent Mr. Lewis asserts that a counselor at USP-Coleman interfered with his attempts to file a BP-9 concerning the use of standard-sized wrist restraints at USP-TH, this interference does not excuse his initial failure to comply with the twenty-day deadline set forth in 28 U.S.C. § 542.14(a). The untimeliness of that BP-9 in May 2017 dooms any later attempts to use the administrative remedy process to resolve his complaints.

The administrative remedy process was "available" to Mr. Lewis while he was incarcerated at USP-TH.

### IV. Conclusion

The defendants have met their burden of showing that Mr. Lewis failed to exhaust available administrative remedies before filing this lawsuit. The consequence, in light of § 1997e(a), is that this action should not have been brought and must now be dismissed without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (holding that "all dismissals under § 1997e(a) should be without prejudice").

The defendants' motion for summary judgment, dkt. [43], is **granted**. This action is **dismissed without prejudice**. Final judgment shall now issue.

**IT IS SO ORDERED.**

Date: 4/14/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JERRY LEE LEWIS
03689-017
TUCSON - USP
TUCSON U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 24550
TUCSON, AZ 85734

Kelly Rota
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kelly.rota@usdoj.gov